**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G&G Closed Circuit Events LLC,<br><br>Plaintiff,<br><br>v.<br><br>Saraj Gem Ray, et al.,<br><br>Defendants. | No. CV-21-00347-PHX-DWL<br><br>**ORDER** |

G&G Closed Circuit Events, LLC ("G&G") held the exclusive nationwide commercial distribution rights to the February 29, 2020 boxing match between Mikey Garcia and Jessie Vargas ("the Program"). In this lawsuit, G&G alleges that Saraj Gem Ray ("Ray") intercepted the Program and displayed it at his Scottsdale restaurant, Three Wise Men, which is owned and operated by Cactus Hospitality Group LLC ("CHG"). Although Ray and CHG were served with the complaint, they never answered or otherwise responded. Accordingly, G&G has now filed a motion for default judgment seeking an award of statutory damages of $25,760. For the following reasons, G&G's motion is granted in part and denied in part. The Court will award statutory damages of $8,500.

## BACKGROUND

I.   Factual Background

The following facts are derived from G&G's complaint (Doc. 1) and from the materials attached to G&G's motion for default judgment (Docs. 24-1, 24-2, 24-3).

G&G obtained the exclusive nationwide commercial distribution rights to the

Program. (Doc. 1 ¶ 19.) Afterward, G&G entered into an array of sublicensing agreements under which individual hotels, bars, restaurants, and other commercial establishments would pay to obtain the right to exhibit the Program within their confines. (*Id.* ¶ 20.) "The commercial fee for an establishment the size of Three Wise Men to broadcast the Program lawfully was . . . $2,860.00." (Doc. 1 ¶17; Doc. 24 at 9 n.3.)

Ray is a managing member of CHG, which in turn owns and operates Three Wise Men. (Doc. 1 ¶¶ 7-9, 15.) On February 29, 2020, Ray had the ability and obligation to supervise and direct the actions of Three Wise Men. (*Id.* ¶¶ 10-11.) On that date, Ray "directed or permitted" employees of Three Wise Men to "unlawfully intercept, receive, and publish" the Program, which was broadcast "on four large television screens" inside Three Wise Men "while patrons of the establishment were present." (*Id.* ¶¶ 12-16.)

An investigator employed by G&G was present inside Three Wise Men as the undercard portion of the Program was being displayed. (Doc. 24-3 at 2.) The investigator, who was not required to pay a cover charge upon entry, "counted approximately three people inside." (*Id.*)

II.  Procedural History

On March 1, 2021, G&G initiated this action by filing the complaint. (Doc. 1.)

On May 27, 2021, G&G filed proof of service as to Ray. (Doc. 10.)

On October 13, 2021, G&G filed proof of service as to CHG. (Doc. 14.)

On October 15, 2021, the Clerk entered a default as to Ray. (Doc. 17.)

On October 21, 2021, the Clerk entered a default as to CHG. (Doc. 22.)

On January 20, 2022, G&G moved for default judgment. (Docs. 23, 24.)

**DISCUSSION**

I.  Default Judgment Standard

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of

the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II. The First, Fifth, Sixth, And Seventh *Eitel* Factors

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment. If G&G's motion were denied, it would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Ray's and CHG's failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect.

The seventh factor generally weighs against default judgment, given that cases "should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Civil Rule of Procedure 55(b), which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 55, at 119-20 (2020).

### III. The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Here, G&G seeks a total of $25,760 in statutory damages, plus attorneys' fees and costs in an amount to be determined following entry of judgment. (Doc. 23-1; Doc. 24 at 8.)

G&G's claim for statutory damages arises under 47 U.S.C. § 605.[1] G&G invokes two different portions of that statute. First, G&G seeks $5,760 in statutory damages under subsection (e)(3)(C)(i)(II), which provides in relevant part that "the party aggrieved may recover an award of statutory damages for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." Second, G&G seeks an additional $20,000 in statutory damages under subsection 605(e)(3)(c)(ii). That provision, which applies "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," provides that "the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation."

As the statutory language makes clear, the Court possesses wide discretion in determining the amount of statutory damages to award in this case. Where the Court has the discretion to reduce a monetary award to a less substantial sum, the fourth *Eitel* factor becomes neutral. *Twitch Interactive, Inc. v. Johnson*, 2018 WL 1449525, *8 (N.D. Cal. 2018).

### IV. The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Viet. Reform Party v. Viet Tan - Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citation omitted). "Of all the *Eitel* factors, courts often consider the second and third

---

[1] Although the complaint asserts two causes of action, one arising under 47 U.S.C. § 605 and the other arising under 47 U.S.C. § 553 (Doc. 1 ¶¶ 18-36), G&G is only seeking statutory damages pursuant to its § 605 claim (Doc. 24 at 4 n.1).

- 4 -

factors to be the most important." *Id.* (internal quotations omitted).

Here, both factors weigh in favor of granting default judgment. Taken as true, the factual allegations in the complaint establish that Ray and CHG engaged in unlawful piracy in violation of 47 U.S.C. § 605(a), that the violation was willful and for purposes of direct or indirect commercial advantage or private financial gain, that Ray and CHG had the right and ability to supervise the infringing activities, and that Ray and CHG had an obvious and direct financial interest in those activities. G&G has prevailed in other lawsuits in this District upon similar showings. *See, e.g., G&G Closed Circuit Events LLC v. Williams*, 2020 WL 3258738 (D. Ariz. 2020).

V.   Balancing The Factors

Having considered all the *Eitel* factors, the Court concludes that default judgment is appropriate.

VI.   Damages

G&G seeks a total of $25,760 in statutory damages, a sum it deems necessary to "compensat[e] Plaintiff" and "act[ ] as a deterrent against future acts of piracy by both these Defendant and others." (Doc. 24 at 8.) Among other things, G&G notes that the cost of the stolen programming was $2,860 and that its investigator observed three patrons inside Three Wise Men while the undercard portion of the Program was being displayed. (*Id.* at 8-9.)

As noted, 47 U.S.C. § 605 affords the Court wide discretion in calculating the size of the statutory damage award in this case. Ray's and CHG's violation of the statute triggers an award of "not less than $1,000 or more than $10,000, as the court considers just," and because the violation was willful and for purposes of direct or indirect commercial advantage or private financial gain, the Court "in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation." Id. §§ 605(e)(3)(C)(i)(II), (C)(ii).

The Ninth Circuit has stated that, when calculating statutory damage awards under § 605 based upon the illegal interception and display of pay-per-view boxing matches,

district courts should attempt to impose "a sanction that deters but does not destroy." *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999). Thus, in *Kingvision*, the Ninth Circuit held that the district court did not abuse its discretion in concluding that the plaintiff's request for an $80,400 statutory damage award "was far too high" in light of the facts that the stolen programming would have cost "between $3,000 and $6,000" and "a high five figure judgment" may have "put[ ] [the] bar out of business." *Id.*

Here, on the one hand, the award must be substantially more than $2,860. G&G deserves to be compensated for the value of the stolen material and considerations of deterrence require the penalty for theft to be much higher than the cost of the stolen material. On the other hand, the Court is not persuaded that an award of $25,760—which is about nine times the cost of the stolen material—is reasonable.

In recent years, G&G has obtained default judgments against other Arizona-based businesses and business owners for illegally intercepting and displaying pay-per-view boxing matches. In those cases, G&G requested large statutory damage awards but the courts declined to award the requested amounts. For example, in *G&G Closed Circuit Events, LLC v. Ortiz*, 2020 WL 1244492 (D. Ariz. 2020), G&G argued that "the Court should triple the licensing fee to $8,400 and enhance it upwards by $25,000 for a total damage award of $33,400." *Id.* at *2-4. The court disagreed and awarded only $5,600, emphasizing that "Defendant's alleged commercial operation is extremely small," "Defendant did not engage in promotional advertising, or charge a premium for . . . food or drinks," and "Defendant was not a repeat offender." *Id.* Similarly, in *G&G Closed Circuit Events, LLC v. Espinoza*, 2020 WL 377095 (D. Ariz. 2020), G&G requested "a total award of $32,500" but the court awarded only $8,500 because, *inter alia*, the restaurant did not impose a cover charge, did not charge a premium for food or drinks, was not filled to capacity, and had no history of violations. *Id.* at *3-4. And again, in *Williams*, this Court awarded only $8,500 in a case where G&G requested $33,400. 2020 WL 3258738 at *4.

This case resembles *Espinoza*. In both cases, G&G's investigator only saw three customers inside the establishment and there was no evidence of a cover charge, increased food and drink prices, or a history of violations. Thus, the Court concludes, in its discretion, that a statutory damage award of $8,500 is best calibrated to deter but not destroy. *Kingvision*, 168 F.3d at 350. Moreover, G&G has reserved the right to file a post-judgment motion for attorneys' fees, which, if granted, will have a further deterrent and compensatory effect.[2]

Accordingly,

**IT IS ORDERED** that G&G's motion for default judgment (Doc. 23) is **granted in part and denied in part**. A separate judgment will issue, after which the Clerk shall terminate this action.

Dated this 21st day of March, 2022.

_____
Dominic W. Lanza
United States District Judge

---

[2] Any motion for attorneys' fees shall be accompanied by an electronic Microsoft Excel spreadsheet, to be emailed to the Court, containing an itemized statement of legal services with all information required by Local Rule 54.2(e)(1). This spreadsheet shall be organized with rows and columns and shall automatically total the amount of fees requested to enable the Court to efficiently review and recompute, if needed, the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the moving party of its burden under Local Rule 54.2(d) to attach all necessary supporting documentation to its motion.